Case 4:16-cv-02776 Document 30 Filed in TXSD on 03/28/17 Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
March 28, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CASSANDRA JACKSON, Individually and on Behalf of the Estate of BETTY JACKSON, Deceased; BRIDGET JACKSON; and ANTHONY JACKSON, §§§§§§§§§ | | |
| Plaintiffs, § | | |
| v. § § | | |
| DIVERSICARE HUMBLE, LLC d/b/a OAKMONT HEALTHCARE AND REHABILITATION CENTER OF HUMBLE; DIVERSICARE MANAGEMENT SERVICES CO.; and MEMORIAL HERMANN HEALTH SYSTEM d/b/a MEMORIAL HERMANN NORTHEAST HOSPITAL, §§§§§§§§§§§ | CIVIL ACTION NO. H-16-2776 | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Oakmont's Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration (Docket Entry No. 7). For the reasons stated below, the motion will be granted.

**I. Background**

Betty Jackson ("Decedent") suffered a stroke on August 29, 2015, and was admitted to Memorial Hermann Hospital that day.[1] Decedent was later discharged from the hospital to Oakmont Rehabilitation ("Oakmont") for continuing physical rehabilitation.

---

[1] See Plaintiffs' First Amended Complaint, Facts Applicable to All Counts, Docket Entry No. 15, pp. 4-7 ¶¶ 10-22.

Decedent's daughter, plaintiff Cassandra Jackson, completed admission paperwork on Decedent's behalf. While at Oakmont, Decedent's health deteriorated, and she died at ICON Hospital on February 11, 2016, of complications caused by infected pressure ulcers and sepsis.

Cassandra Jackson signed, on Decedent's behalf, a document titled "Arbitration Agreement."[2] Section II.A. of the Agreement states that:

> The Parties agree that any claim arising out of or relating to treatment and/or services received by Resident shall be resolved exclusively by binding arbitration of all claims including, but not limited to, any claim for payment, nonpayment or refund for services rendered, violations of any right guaranteed to Resident, violation of state and/or federal law, breach of contract, fraud or misrepresentation, negligence, gross negligence, wrongful death, survival action, health care liability claim, malpractice, or any other claim based on the departure from accepted standards of medical or health care or safety whether sounding in tort or contract . . . .[3]

Under Section III, titled "Arbitration Process," the Agreement states that "[a]ny mediation or arbitration that is conducted shall be administered by the National Arbitration Forum under its Code of Procedure in effect at the time this Agreement is entered."[4] The Agreement also contains a severance provision, which states:

---

[2] Arbitration Agreement ("the Agreement"), Exhibit 1 to Defendant Oakmont's Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration, Docket Entry No. 7-1, pp. 52-54.

[3] Id. at 53.

[4] Id. at 54, Section III.D.

> The Parties agree that all of the provisions contained in this Agreement are severable. In the event that any provision of the Agreement, or portion thereof, is held to be invalid by a court of competent jurisdiction, this Agreement shall be interpreted as if the invalid provision or portion was not contained herein, and the remaining provisions of the Agreement will remain in full force and effect and shall continue to be valid and enforceable and binding upon the Parties. This Agreement will not fail because any part, clause or provision hereof is held to be indefinite, invalid, or unenforceable.[5]

Cassandra Jackson filed this action against Oakmont in the 164th Judicial District Court of Harris County, Texas. Oakmont removed the case to this court on the basis of the court's diversity jurisdiction and moved to compel arbitration. Another of Decedent's daughters, Bridget Jackson, and Decedent's son, Anthony Jackson (collectively, "Plaintiffs") have since joined Cassandra Jackson as plaintiffs. Plaintiffs have sued Diversicare Management Co. ("Diversicare Management") and Memorial Hermann Health System d/b/a Memorial Hermann Northeast Hospital ("Memorial Hermann") as additional defendants.

## II. Discussion

Under the Federal Arbitration Act ("FAA") an arbitration agreement in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also id. § 1. Underlying the

---

[5]Id. at 54, Section II.F.

FAA is "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted); see Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts — no more and no less."). Thus, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." Concepcion, 131 S. Ct. at 1745 (internal citations omitted).

To determine whether the parties entered into a binding agreement to arbitrate the dispute requires the court to consider two issues: (1) validity -- i.e., "whether there is a valid agreement to arbitrate between the parties" -- and (2) scope -- i.e., "whether the dispute in question falls within the scope of that arbitration agreement." JP Morgan Chase & Co. v. Conegie, 492 F.3d 596, 598 (5th Cir. 2007). Although there is a strong federal policy favoring arbitration, the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Gross v. GGNSC Southaven, L.L.C., 817 F.3d 169, 176 (5th Cir. 2016) (quoting American Heritage Life Insurance Co. v. Lang, 321 F.3d 533, 537-38 (5th Cir. 2003)). Instead, courts "apply ordinary state-law principles that govern the formation of contracts." Id. (quoting Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996)).

Plaintiffs argue that the Agreement is invalid because the arbitrator it names is no longer available.[6] In support of their argument Plaintiffs rely on two unpublished opinions from the same case. See Ranzy v. Tijerina, 393 F. App'x 174 (5th Cir. 2010); Ranzy v. Extra Cash of Texas, Inc., Civil Action No. H-09-3334, 2011 WL 6719881 (S.D. Tex. Dec. 21, 2011). The parties in Ranzy agreed to arbitrate and selected the National Arbitration Forum ("NAF"). Ranzy v. Extra Cash, 2011 WL 6719881 at *1. Because the NAF was no longer an available forum, the plaintiff contended that the arbitration provision was invalid. Id. at *3. Defendants responded that the court should appoint a new arbitrator using the mechanism provided by § 5 of the FAA. Id. at *4. The district court concluded that it could not appoint another arbitrator because "the NAF was clearly an integral part of the arbitration provision." Id. at *5. The Fifth Circuit agreed, reaffirming its earlier holding that "where the parties' agreement specifies that the laws and procedures of a particular forum shall govern any arbitration between them, that forum-selection clause is an

---

[6]As a preliminary matter, the court notes that Plaintiffs do not argue, either in Plaintiffs' Response to Defendant Diversicare Humble, LLC's Motion to Compel Arbitration (Docket Entry No. 20) or in Plaintiffs' Sur-Reply in Support of Plaintiffs' Response to Defendant Diversicare Humble, LLC's Motion to Compel Arbitration (Docket Entry No. 27), that the non-signatory plaintiffs are not bound by the Agreement if the court concludes that it is valid. Nor do Plaintiffs argue that their claims are beyond the scope of the Agreement or otherwise not arbitrable. Oakmont does not argue that defendants Diversicare Management and Memorial Hermann are bound by the Agreement.

'important' part of the arbitration agreement." Ranzy v. Tijerina, 393 F. App'x at 176.

Plaintiffs argue that the reasoning from Ranzy applies here. Defendants argue that this case is distinguishable because the Agreement contains a severance provision. Plaintiffs respond that the agreement in Ranzy also contained a similar provision. But this argument is unpersuasive because neither of the Ranzy opinions addressed the relevance of the severance provision.[7] "[A]ccording to black letter law, 'a question not raised by counsel or discussed in the opinion of the court' has not 'been decided merely because it existed in the record and might have been raised and considered.'" De La Paz v. Coy, 786 F.3d 367, 373 (5th Cir. 2015) (citing United States v. Mitchell, 46 S. Ct. 418, 419-20 (1926); HENRY CAMPBELL BLACK, HANDBOOK ON THE LAW OF JUDICIAL PRECEDENTS, OR, THE SCIENCE OF CASE LAW 37 (1912)).

After reviewing the Agreement in its entirety, the court concludes that the essence of the Agreement is that the parties arbitrate, not the forum in which they do so. As the Fifth Circuit held in Ranzy, the selection of the arbitral forum and its governing laws is an "important" part of a contract. And a severance provision cannot be used to sever an essential provision. But the presence of a severance provision is also evidence of the parties' intent. See Coronado v. D N.W. Houston, Inc., Civil

---

[7]Nor have any subsequent Fifth Circuit opinions citing Ranzy addressed this issue.

Action No. H-13-2179, 2015 WL 5781375, at *10-11 (S.D. Tex. Sept. 30, 2015). ("The presence of a severability clause sheds light on the agreement's 'essential purpose.'") (citing John R. Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 87 (Tex. App.--Houston [14th Dist.] 1996, writ denied)). The severance provision in the Agreement, when read in conjunction with the provision selecting the NAF, indicates that the selected forum is not an essential part of the contract.

The Agreement in this case differs from the one in Ranzy in at least three significant respects. First, the Agreement is a standalone, two-page Arbitration Agreement rather than a single provision in a credit agreement. The Agreement contains multiple provisions. The only reference to the NAF appears in a single sentence in one section.

Second, the Agreement contains a provision that allows for the severance of "any provision of the Agreement, or portion thereof [that] is held to be invalid."[8] The Agreement states that it "shall be interpreted as if the invalid provision or portion was not contained herein, and the remaining provisions of the Agreement will remain in full force and effect and shall continue to be valid and enforceable and binding upon the Parties."[9] The Agreement reflects the parties' intent that it "will not fail because any

---

[8]Agreement, Docket Entry No. 7-1, p. 54, Section II.F.

[9]Id.

part, clause or provision hereof is held to be indefinite, invalid, or unenforceable."[10]

Finally, and perhaps most important, the provision naming the NAF provides an alternative method for choosing an arbitrator.[11] The alternative process for choosing an arbitrator evidences the parties' intent that the selected forum and procedures are not essential to the Agreement.[12]

Because a reasonable reading of the contract omitting any reference to the NAF still provides a procedure for the parties to select an arbitrator, the court concludes that the portion of a provision naming the NAF as a forum is not essential. Because the unavailability of the selected forum is the only remaining issue raised by Plaintiffs, the court concludes that the Agreement is valid and binding.

---

[10] Id.

[11] "If the parties cannot agree to a single arbitrator to resolve the claim(s) under these procedures, the parties agree to submit the claim to a panel of three (3) arbitrators." Exemplar of Agreement, Exhibit to "Per the Court's Request Defendant Oakmont's Supplement to Its Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration," Docket Entry No. 28-1, Section III.D, p. 11. Because the original signed Agreement was not entirely legible, Defendant Oakmont provided an exemplar with identical language accompanied by an affidavit. No objections have been raised by Plaintiffs as to its accuracy.

[12] This also eliminates the need for the court to appoint an arbitrator under § 5 of the FAA at this time. As a result, the court does not opine on the applicability of § 5 when the selected forum is unavailable.

## III. Conclusion and Order

For the reasons stated above, the court concludes that the parties are subject to a valid and binding arbitration agreement. For that reason, Defendant Oakmont's Motion to Compel Arbitration and Motion to Stay Proceedings Pending Arbitration (Docket Entry No. 7) is **GRANTED**. The parties are **ORDERED** to notify the court on or before April 17, 2017, of the name of an arbitrator or panel of arbitrators -- determined by the process described in the Agreement -- that they have agreed upon for the court to appoint. If the parties cannot agree on an arbitrator or panel of arbitrators by April 17, 2017, they are **ORDERED** to provide the court by that date a list of five agreed qualified arbitrators from which the court can select one arbitrator. Further proceedings against defendant Oakmont are **STAYED** pending the outcome of arbitration.

**SIGNED** at Houston, Texas, on this 28th day of March, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE